# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MARISSA D. HERMSEN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 11-00753-CV-W-BP |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment as to Liability, (Doc. 90), and Defendant's Motion for Summary Judgment, (Doc. 98). Plaintiff Marissa D. Hermsen brings this putative collective action on behalf of herself and all others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendant City of Kansas City, Missouri ("the City"). For the reasons below, Defendant's Motion is **DENIED** and Plaintiffs' Motion is **GRANTED**.

## I. Background[1]

Hermsen and the putative class are or were employed as emergency medical technicians ("EMTs") and/or paramedics for the City, a municipality. On April 25, 2010, the City transferred its ambulance services from Municipal Ambulance Services Trust ("MAST") to the City fire department. Employees of MAST, including Plaintiffs, then became employees of the City. Upon integration of MAST services to the City, Plaintiffs were assigned to 24-hour shifts and were considered Fire Technicians or Fire Medics. Fire Technicians and Fire Medics work 24-hour shifts, are assigned to a single fire station during that shift, and are paid overtime after

---

[1] The Court has considered the parties' statements of material facts supported by evidence and drawn all inferences in favor of the non-movant. *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726 (8th Cir. 2012). Included in this section are facts that the Court concludes are uncontroverted and supported by the evidentiary record.

working 212 hours in a 28-day period. Additionally, Plaintiffs must complete a 40-hour training course to be Fire Technicians or Fire Medics. Currently, the City treats Fire Technicians and Fire Medics as exempt from overtime compensation after working 40 hours under § 207(k) of the FLSA, which provides:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities . . . if—(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of 216 hours . . . compensation at a rate not less than one and one-half times the regular rate at which he is employed.

Like Fire Technicians and Fire Medics, pursuant to § 207(k), firefighters employed by the City are generally exempt from overtime wages unless they work more than 212 hours in a 28-day period. City firefighters are also required to complete substantial training to engage in fire suppression, pass a physical fitness test, and receive HazMat certification. Firefighters are trained and have the responsibility to work in the immediate area of the fire, or "hot zone" of the fire, and have the legal authority and responsibility to engage in fire suppression.

### a. Facts Related to Training

Currently, new EMTs and paramedics hired by the City fire department complete firefighter training and are dual-function firefighters. Dual-function EMTs and paramedics are fully trained firefighters but employed as EMTs and paramedics. Plaintiffs are not dual-function firefighters. Unlike dual-function firefighters, Fire Technicians and Fire Medics do not receive the same training as firefighters employed by the City. They are required to complete a 40-hour training course while firefighters employed by the City must complete over 250 hours of training. They are also not trained in all duties of fire suppression, such as performance duties in the hot zone of a fire or how to use a self-contained breathing apparatus ("SBCA"). However, they do receive training on areas relevant to their positions that firefighters do not.

2

b. **Facts Related to Legal Authority and Responsibility**

On August 1, 2011, the City fire department issued the General Administrative Guidelines ("GAG"), stating that Fire Technicians and Fire Medics "shall have the legal authority and responsibility to engage in fire suppression duties and other emergency operations. These personnel shall be restricted from performing any duties in the 'hot zone' and shall perform duties within the 'warm zone.'" The warm zone is the area outside the fire's immediate area.

The City fire department further defines the responsibilities of Fire Technicians and Fire Medics in the General Operations Guidelines ("GOG"), stating that they "shall be involved in activities within the 'warm zone' of emergency scene incidents and not operations within the 'hot zone.'" Fire Technicians and Fire Medics primarily provide emergency medical support at fire scenes, as well as life support and fire combat support. While they rarely engage in fire combat support duties, the City fire department can and could, prior to the issuance of the GOG, utilize Fire Technicians and Fire Medics in support roles and to engage in fire combat support activities. There are instances of Fire Technicians and Fire Medics engaging in fire combat support duties. Additionally, Fire Technicians and Fire Medics may be assigned fire protection activities, and can be disciplined if they refuse to participate in such activities. However, the ambulances to which Fire Technicians and Fire Medics are assigned are not equipped with fire suppression equipment, SBCA, or suppression firefighting gear.[2]

## II. Summary Judgment

A party is entitled to summary judgment when the evidentiary record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726-27 (8th Cir. 2012).

---

[2] This suppression firefighting gear includes a coat, heat resistant bunker pants, and a helmet.

When a party moves for summary judgment, the court's role is to determine whether the evidentiary record contains genuine issues of material fact. *Connolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). The court makes this determination by viewing the facts and drawing all reasonable inferences in favor of the plaintiff. *Heacker*, 676 F.3d at 726-27.

### III.    FLSA Standard and Background

Prior to 1999, courts looked to Department of Labor regulations to determine whether an employee fell under the fire protection activities exemption. *See* 29 C.F.R. §§ 553.210, 553.212. At that time, an employee in fire protection activities referred to any employee:

> (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards.

29 C.F.R. § 553.210.[3]  Additionally, the Department of Labor regulations stated that an employee may fall outside the exemption under § 207(k), even when that employee fell under the definition of fire protection activities, if non-fire-related activities took up more than 20 percent of the employee's time.  29 C.F.R. § 553.212.

In 1999, the FLSA was amended to include § 203(y) to clarify the definition of fire protection employees. Section 203(y) defines a person engaged in fire protection activities as:

> [A]n employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who—
>
> > (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and

---

[3] 29 C.F.R. § 553.210 has since been amended to adopt the FLSA's definition of fire protection activities. *See* 29 C.F.R. § 553.210 (2011).

4

> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y). "The purpose of adding § 203(y), therefore, was to 'ensure that firefighters who are cross-trained as emergency medical technicians, HAZMAT responders and search and rescue specialists would be covered by the exemption even though they may not spend all of their time performing activities directly related to fire protection.'" *See Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 312 (3d Cir. 2008) (quoting 145 Cong. Rec. 28, 520 (1999) (statement of Rep. Boehner)). Section 203(y) is very similar to the Department of Labor four-part test in that it includes requirements for training in fire suppression, as well as legal authority and responsibility to engage in fire suppression. 29 U.S.C. § 203(y). The FLSA, however, does not provide that an employee may fall outside § 207(k) if non-fire-related activities take up more than 20 percent of that employee's time. Additionally, § 203(y) does not define "fire suppression."

Whether an employee is exempt from overtime compensation is an affirmative defense for which the employer has the burden of proof. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011). To succeed on this defense, the employer must "prove that this exemption applies by demonstrating that their employees fit plainly and unmistakably within the exemption's terms and spirit." *Spinden v. GS Roofing Prods. Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996) (internal quotation and marks omitted). "The question whether their particular activities excluded [Plaintiffs] from the overtime benefits of the FLSA is a question of law[.]" *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). Additionally, FLSA exemptions are "narrowly construed in order to further Congress' goal of providing broad federal employment protection." *Spinden*, 94 F.3d at 426 (quotation omitted).

5

To date, the Eighth Circuit has not ruled on whether EMTs and/or paramedics employed by a municipal fire department fit into the FLSA overtime compensation exemption, and thus the Eighth Circuit has not addressed what constitutes "fire suppression" in the context of § 203(y). However, the Eighth Circuit has ruled on what constitutes "fire suppression" prior to 1999, using Department of Labor regulations. *See Christian v. City of Gladstone, Mo.*, 108 F.3d 929, 931 (8th Cir. 1997); *Lang v. City of Omaha, Neb.*, 186 F.3d 1035, 1038 (8th Cir. 1999).

In *Christian*, paramedics employed by the city fire department sued the city for overtime pay under the FLSA. 108 F.3d at 929. The *Christian* court explained, "[a] central consideration under the test is whether an employee actually fights fires. . . . Paramedics who are not permitted to fight fires or enter a burning building and who are only dispatched to fires to treat injured individuals are not engaged in fire protection activities under the four-part test [of 29 C.F.R. § 553.210]." *Id.* at 932. However, the Eighth Circuit concluded that because the paramedics at issue were also trained and certified as firefighters, they were engaged in fire protection activities and subject to the FLSA overtime exemption. *Id.* at 931.

Similarly, in *Lang*, the court held that because the plaintiff paramedics were also sworn and trained firefighters, they fell under the FLSA overtime exemption. 186 F.3d at 1038. There, the Eighth Circuit distinguished a similar claim from the District of Maryland, "in which the paramedics could not have satisfied the four-part test because they were not trained in firefighting or rescuing victims from fires, and were not authorized to fight fires." *Id.* at 1038 (discussing *Nalley v. Mayor and City Council of Baltimore*, 796 F.Supp. 194 (D. Md. 1992)). The *Lang* court also noted that the fully trained paramedic-firefighters in that case did not need to be directly involved in fighting fires to be engaged in fire protection activity. *Id.* at 1039. Rather, "the rendering of medical aid (or being able to do so) constitutes a qualified incidental

6

non-firefighting function." *Id.* Although analyzing a slightly different test, the Court finds the Eighth Circuit's analysis in *Christian* and *Lang* instructive because § 203(y) was intended to clarify the FLSA exemption and is derived from the four-part test under Department of Labor regulation § 553.210.

IV.     **Analysis**

Of the factors to consider when determining whether to apply § 203(y), the parties do not dispute that Plaintiffs are employed by the fire department of the City, a municipality. They dispute the remaining factors under § 203(y)(1).[4] Plaintiffs contend that the City's policy to not compensate them for hours worked in excess of 40 violates the FLSA because Plaintiffs: (1) did not and do not have the legal authority to engage in fire suppression; (2) do not have the responsibility to engage in fire suppression; (3) are not trained in fire suppression; and (4) are not engaged in fire suppression. Specifically, Plaintiffs argue they did not have the legal authority to engage in fire suppression until the City issued the GAG in August 2011. Moreover, they contend that regardless of whether they have the legal authority to engage in fire suppression, they do not have the responsibility to do so because they lack the training and equipment to be firefighters, and do not actually fight fires. The City contends Plaintiffs have always had the legal authority and responsibility to engage in fire suppression because the GAG merely put into writing the long-term practice of the City fire department. The City argues Plaintiffs are exempt under § 207(k) because Plaintiffs are engaged in fire protection activities. The City further argues that Plaintiffs were trained in fire suppression duties in the warm zone, but acknowlegdes that Plaintiffs have not received training necessary to enter the hot zone or engage in combat

---

[4] It is unclear whether Plaintiffs assert that they also are not "engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk" under § 203(y)(2). To the extent that Plaintiffs dispute this factor, the Court finds that there is no genuine dispute of material fact that Plaintiffs are charged with responding to situations where life, property, or the environment are at risk. (*See, e.g.*, Doc. 91-2, Interrogatory 2; Berardi Depo., Doc. 100-1, p. 72.)

7

Case 4:11-cv-00753-BP   Document 109   Filed 06/25/14   Page 7 of 13

firefighting duties. The City seeks summary judgment. In contrast, Plaintiffs seek partial summary judgment as to liability only.

### a. Legal Authority to Engage in Fire Suppression

The Court concludes Plaintiffs had the legal authority to engage in fire suppression both prior to and after the issuance of the GAG in August 2011. Prior to the issuance of the GAG, there was no written document setting forth the legal duties of any fire department employees. (Berardi Depo., Doc. 100-1, p. 22; *see also* GAG, Doc. 100-6.) Rather, the legal authority and responsibilities of all City fire department employees came, and still derives, from the City charter. (*See* Municipal Code, Doc. 100-3; *see also* Municipal Code, Doc. 100-2.) The GAG simply provides details to the broad legal authority provided by the City charter and explains that Fire Technicians and Fire Medics have "the legal authority and responsibility to engage in fire suppression duties and other emergency operations in the 'warm zone'" of a fire. (GAG, Doc. 100-6.) It is unrealistic and unreasonable to conclude that all members of the City fire department did not have the legal authority or responsibility to engage in fire suppression prior to the issuance of the GAG. Thus, the City has shown that Plaintiffs had the legal authority to engage in fire suppression prior August 2011.

### b. Responsibility to Engage in Fire Suppression

Although the Court concludes Plaintiffs had the legal authority to engage in fire suppression activities, the real question is whether they had the responsibility to engage in such activities. In determining the answer to this question, the Court finds two cases particularly instructive, *Lawrence*, 527 F.3d 299 and *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005).

In *Lawrence*, the Third Circuit concluded that EMTs and paramedics employed by the fire department were not exempt under § 207(k) because they received training different than that given to firefighters, that plaintiffs were not fully cross-trained or dual-function firefighters, and plaintiffs did not have the duties or equipment required to engage in fire suppression. *Id.* at 308-10, 315-16. In *Cleveland*, the Ninth Circuit concluded that plaintiffs, who were firefighters trained as dual-function paramedics, did not have the responsibility to engage in fire suppression because: (1) plaintiffs' ambulances did not carry fire-fighting equipment or breathing apparatuses; (2) a dispatcher did not know if he or she was sending single or dual-function paramedics to a call; (3) paramedic ambulances were not regularly dispatched to fire scenes and were dispatched only when there appeared to be a need for advanced life support medical services; (4) dual-function paramedics were not expected to wear fire protective gear; (5) dual-function paramedics were dispatched to a variety of incidents (e.g., vehicle accidents and crime scenes) at which they were expected to perform only medical services; and (6) there was no evidence that a dual-function paramedic had ever been ordered to perform fire suppression. *Cleveland*, 420 F.3d at 990.

It is undisputed that Plaintiffs do not have the same training as firefighters employed by the City. Plaintiffs receive only 40 hours of training while firefighters receive 270 hours of training. (Firefighter training schedule, Doc. 91-5; Fire Medic/Tech training, Doc. 91-9.) Additionally, Plaintiffs' training covers only nine topics while City firefighters have training in 21 topics. For example, firefighters receive 22 hours of personal protective equipment training, 26 hours of rescue and extrication training, 14 hours of ventilation training, 26 hours of fire control training, and eight hours of fire detection, alarms, and suppression systems training.

9

(Firefighter training schedule, Doc. 91-5.)  Plaintiffs are not trained in any of these topics.  (*See* Fire Medic/Tech training, Doc. 91-9.)

The only areas in which Fire Technician and Fire Medic training overlaps with firefighter training are firefighter safety, fire behavior, building construction, fire hose training, and fire department communication.  Of those areas, Fire Technicians and Fire Medics receive at least eight hours less training, with the exception of fire behavior and building construction.  Moreover, the City admits that Plaintiffs' training "does not cover all topics necessary to enter a building structure to extinguish the fire (the 'hot zone')." (Berardi Decl., Doc. 100-11; *see also* Berardi Depo, Doc. 100-1, pp. 8-9, 52.)  Rather, Plaintiffs only receive training "covering all topics necessary to provide combat support outside the immediate area of a burning structure (the 'warm zone')."  (Berardi Decl., Doc. 100-11; *see also* GOG, Doc. 100-7.)   Additionally, firefighters must also pass a physical fitness test and receive HazMat certification, which Plaintiffs are not required to do.  (GAG, Doc. 91-6; GAG, Doc. 91-7; *see also* Fire Medic/Tech training, Doc. 91-9.)

Based on these substantial differences in training, the City's argument that Plaintiffs were trained in fire suppression duties as defined by the FLSA is unpersuasive.  As previously noted, "[t]he purpose of adding § 203(y) . . . was to 'ensure that firefighters who are cross-trained as emergency medical technicians, HAZMAT responders and search and rescue specialists would be covered by the exemption even though they may not spend all of their time performing activities directly related to fire protection.'"  *Lawrence*, 527 F.3d at 312 (quoting 145 Cong. Rec. 28, 520 (1999) (statement of Rep. Boehner)).  Plaintiffs are not cross-trained as firefighters and they are not trained in actually fighting fires, entering burning buildings, or in any suppression activities for the hot zone of a fire.  Plaintiffs are only trained in fire combat support,

which is different from fire suppression.[5] To be sufficiently trained in fire suppression, Plaintiffs' must be trained to perform activities required for or are directly concerned with the prevention, control, or extinguishment of fire. However, Plaintiffs' training does not reasonably permit them to perform such activities. Thus, they are not trained in fire suppression. *See Christian*, 108 F.3d at 932; *Lawrence*, 527 F.3d at 317-18.

Further, Plaintiffs are not expected or permitted to fight fires. In addition to not receiving full fire suppression training, Plaintiffs are not issued the proper equipment to fight fires. For example, they are not trained or permitted to use SBCA, nor are they equipped with SBCA. (GOG, Doc. 100-7; Berardi Depo, Doc. 100-1, p, 95.) Additionally, Plaintiffs' ambulances are not equipped with suppression firefighting gear. (Berardi Depo, Doc. 100-1, pp. 95-96.) Without the proper equipment, Plaintiffs cannot be required to be directly concerned with the fire suppression.

Moreover, the cases cited by the City do not support a finding that Plaintiffs have the training and legal responsibility to engage in fire suppression. Throughout its briefing, the City relies on *Christian* and *Lang*, both of which note that providing medical support is required for and directly concerned with the control or extinguishment of fires. The City also relies on Eleventh and Fifth Circuit cases, which hold that dual-function firefighters/EMTs and paramedics fall under the FLSA overtime compensation exemption. *See Huff v. Dekalb County, Ga.*, 516 F.3d 1273, 1281 (11th Cir. 2008) (parties did not dispute that plaintiffs had advanced firefighter training); *Gonzalez v. City of Deerfield Beach, Fla.*, 549 F.3d 1331, 1336 (11th Cir.

---

[5] Plaintiffs' fire combat support duties include: (1) operating ground ladders; (2) hydrant operations; (3) assisting with advancing hose lines, and securing them and other equipment after an incident; (4) shutting off natural gas meters; (5) refilling and managing SBCA; (6) medical operations; (7) evacuations in the warm zone; (8) assistance with command post; and (9) customer service activities. (*See* Doc. 100-7.)

11

2008) (plaintiffs were trained in fire suppression and been issued the appropriate gear);[6] *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006) (plaintiffs were firefighters who graduated from the fire academy where they were trained in fire suppression). However, those cases are distinguishable because, unlike Plaintiffs here, those plaintiffs were all cross-trained or dual-function firefighters/EMTs or paramedics during the time frame in dispute. Additionally, in both *Christian* and *Lang*, the Eighth Circuit noted that employees who were not trained in firefighting or rescuing victims from fires, and who were not permitted to fight fires or enter a burning building, were not engaged in fire protection activities. *See Christian*, 108 F.3d at 932; *Lang*, 186 F.3d at 1038.

Plaintiffs cannot reasonably be expected to fight fires when they do not have the required equipment or training to do so, and are not actually fighting fires. *See Christian*, 108 F.3d at 932 ("A central consideration . . . is whether an employee actually fights fires. . . . Paramedics who are not permitted to fight fires or enter a burning building and who are only dispatched to fires to treat injured individuals are not engaged in fire protection activities[.]"); *Cleveland*, 420 F.3d at 990 ("for Plaintiffs to have the 'responsibility' to engage in fire suppression, they must have some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it."); *see also Haro v. City of Los Angeles*, 745 F.3d 1249, 1256-58 (9th Cir. 2014) (holding that dispatchers and aeromedical technicians performed support duties, but were not engaged in fire suppression because they were not dispatched to fire scenes and/or actively engaged fires). Because Plaintiffs do not have the proper equipment, training, or the obligation to engage in fire suppression, they do not have the legal responsibility to engage in fire suppression.

---

[6] While the Eleventh Circuit does not state that plaintiffs were dual-function firefighters/EMTs and paramedics, the district court decision clarifies that plaintiffs were firefighters who had been cross-trained as EMTs and/or paramedics. The only issue before the court was whether those plaintiffs had the legal authority and responsibility to engage in fire suppression. *See Gonzalez v. City of Deerfield, Fla.*, 510 F. Supp. 2d 1037 (S.D. Fla. 2007).

12

Based on the evidence before the Court demonstrating that Plaintiffs are not trained in fire suppression and do not have the legal responsibility to engage in fire suppression, the City has not met its burden to show that Plaintiffs "fit plainly and unmistakably within the [overtime] exemption's terms and spirit." *Spinden*, 94 F.3d at 426. Therefore, summary judgment in favor of Plaintiffs is proper.[7]

V.  **Conclusion**

Accordingly, Defendant's Motion for Summary Judgment, (Doc. 98), is **DENIED** and Plaintiffs' Motion for Partial Summary Judgment as to Liability, (Doc. 90), is **GRANTED**. Further, Plaintiffs' Motion for Leave to File Supplemental Authority, (Doc. 106), is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE:  June 25, 2014

---

[7] To the extent the City relies on the Department of Labor report finding that the City complied with the FLSA, (Doc. 100-10), the Court does not find it persuasive. *See* 29 C.F.R. § 785.2 ("The ultimate decisions on interpretations of the [FLSA] are made by the courts."); *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944) (courts should defer to interpretive agency regulations only to the extent they have the power to persuade); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (courts are not bound by informal administrative opinions. Rather, "[agency i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant" giving effect to an agency's regulation).